Emma MOSES, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Sept. 27, 1968.

C. B. Upton, Williamsburg, Marion Rider, Frankfort, for appellant.

John B. Breckinridge, Atty. Gen., John B. Browning, Joseph H. Eckert, Asst. Attys. Gen., Frankfort, for appellee.

DAVIS Commissioner.

Emma Moses was convicted of carrying a concealed deadly weapon as denounced by KRS 435.230. Her punishment was fixed at confinement in the penitentiary for two years. On this appeal she asserts (1) she was entitled to a directed verdict; (2) the instructions were prejudicially erroneous; and (3) improper conduct of the employed prosecuting attorney.

There is very little dispute as to most of the material facts involved in this case. On June 21, 1965, about 11:30 a.m., the appellant was observed at a grocery store carrying a black purse. About thirty minutes after that several persons were parked in an automobile near appellant's home and observed her come out of her home and approach the car. An argument developed in the course of which appellant drew a pistol from her purse. The appellant admitted that she had the pistol in her purse but insisted that at least 2½ inches of its barrel were protruding from the purse and clearly visible. Witnesses for the Commonwealth testified that they saw the purse on appellant's arm immediately before she produced the pistol from it, but they did not see the barrel protruding out of the purse. One of the witnesses deposed:

"Q38 What did she do when she got to the car?

A She took the purse and opened it and got a gun out.

Q39 What kind of purse was it?

A It was just a black purse.

Q40 Could you tell how it opened and how it shut?

A It had a little snap on the top of it.

Q41 At that time where was it about her—the purse?

A It was on her arm.

Q42 Show, if you can, show the jury how she opened the purse.

A She put it down against her leg and snapped the top open.

Q43 Could you see the pistol before she opened the purse, or when did you first see it?

*MR. UPTON:* OBJECTION.

*THE COURT:* OVERRULED.

A I didn't see it until she had it out in front of her."

■ Appellant urges that she was entitled to a directed verdict because she testified that the pistol was visible and the only contrary evidence was in the nature of negative testimony by witnesses who said they did not see the pistol until after she took it from her purse. One of the authorities relied upon by appellant is Delk v. Commonwealth, Ky., 344 S.W.2d 832, but as we read Delk it is contrary to the views urged by the appellant. Delk also maintained that he was entitled to a directed verdict when prosecuted for carrying a concealed deadly weapon because he testified that the gun was "sticking out" of his hip pocket. In rejecting Delk's contention this court said in part:

"They all testified that they never saw the gun until Delk drew, even though they had a view of Delk's back and hip pockets. If Delk had the gun in his pocket this testimony indicates that it was there concealed and not 'sticking out' as claimed by Delk. It is sufficient we think to require a submission to the jury on the question of concealment." Id. 344 S.W. 2d 833.

Here, as in Delk, witnesses had a close view of appellant's purse and testified that they saw no gun protruding from it and that she drew it out of the purse after opening it. It seems clear that the Commonwealth made out a submissible case, and the court did not err in refusing a directed verdict of acquittal.

■ The second ground relied upon by appellant relates to her claim that the Commonwealth introduced evidence of two separate violations of the statute against carrying concealed deadly weapons and should have been required to elect which of these offenses was relied upon in the prosecution. Reliance is had upon Bishop v. Commonwealth, Ky., 325 S.W.2d 83, and cases of like tenor. We recognize the correctness of the rule announced in Bishop but find it inapplicable here. In Bishop the Commonwealth proved two distinct violations but made no election and was deemed to have elected to stand upon the first act proved so that it was error for the court to instruct on the second act proved. In the present case the appellant insists that the Commonwealth had proved her violation of the statute when it introduced evidence that she was at the grocery with her purse at 11:30 a.m. The difficulty of this position is that the Commonwealth did not prove, nor did it undertake to prove that appellant was then carrying a concealed deadly weapon in the purse. Appellant subsequently testified that she had placed the weapon in her purse before going to the grocery store, but continued to maintain that the barrel of the gun was plainly visible even then. In these circumstances it may not be said that the Commonwealth presented evidence of a separate violation within the purview of the rule recognized in the Bishop case, supra.

■ The final attack on the conviction is claimed error in the conduct of the attorney employed as prosecutor. The basis of this contention is that the prosecutor was permitted to subject appellant's counsel "to inexcusable embarrassment, and prejudice her

before the jury." The attorney for the prosecution presented to a rebuttal witness a purse for inspection and asked whether the purse had contained a pistol in it when the attorney had exhibited it to the witness a short time before. It then developed that counsel for appellant had caused the pistol to be removed from that particular purse and left in a room adjacent to the court room. The exact colloquy points up the situation complained of and is thus reported in the record:

"Q3  Now, have you seen this pocketbook before?

A  No, I haven't.

Q4  Did I show it to you in the room?

A  Yes, sir.

Q5  Did I have a pistol in it?

MR. UPTON: OBJECTION.

THE COURT: OVERRULED.

A  Yes, sir.

Q6  Is the pistol in it now?

MR. UPTON: OBJECTION.  That's not in rebuttal of anything.

THE COURT: I think it's a question about the pocketbook.

MR. TEAGUE: Yes, it is.

THE COURT: You can tell about it.

MR. TEAGUE:  Mr. Upton took the pistol out of it.

MOTION:

MR. UPTON:  OBJECT to the statement Mr. Teague just made. It's not in rebuttal of anything; that it's a trick and a scheme that the hired counsel of the Commonwealth undertook to perpetrate on this defendant, in this open courtroom, by putting a pistol in the purse and handing it back to the table where Mrs. Moses sat, and I did go in the room and take the pistol out, and the Court shouldn't permit tricks to be done, which was the statement

that he made about I took the pistol out when he put it in, and is calculated to inflame the jury. Counsel for the defendant now moves the Court to declare a mistrial and set aside the swearing of the jury in this case.

MR. TEAGUE:  To which motion counsel for the Commonwealth OBJECTS.

THE COURT: OVERRULE the motion, SUSTAIN the objection, save an exception.

MR. TEAGUE:  Mr. Upton, would you go get the gun?

MR. UPTON:  If you want it, you go get it.

THE COURT: This is not the proper way to do things. These are all professional men here. You people are the tryers (sic) of the facts. Go in and get that pistol, Mr. Upton.

MR. UPTON:  Show our exceptions.

MOTION:

MR. UPTON:  Counsel for the defendant moves the Court to discharge the jury because the Court ordered me, in the presence of the jury, to go in and get the pistol, and further moves the Court to declare a mistrial in this case.

THE COURT: OVERRULE the motion. Go and get the pistol and bring it back in here.

ADMONITION BY THE COURT TO THE JURY:

Ladies and gentlemen of the jury, you are the tryers (sic) of the facts and you listen to the testimony of the witnesses and you are permitted to see the exhibits. Histrionics has long been a tool of the trade. You are just to consider the evidence and the facts as you see them."

We are unable to attribute to this incident the sinister import urged by the appellant. It seems clear that the trial court properly admonished the jury, and there is nothing to suggest that the trial

judge maintained or implied any condemnation of appellant's counsel. In short, we find no merit in the asserted ground of error.

The judgment is affirmed.

All concur.